USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/18/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X
JOHN M. STACK,                                        :
                                                      :
                                    Plaintiff,        :
                                                      :
                  - against -                         :            18-CV-10371 (VEC)
                                                      :
                                                      :            OPINION
KARR-BARTH ASSOCIATES, INC.,                          :
AXA ADVISORS, LLC, and                                :
AXA NETWORK, LLC,                                     :
                                                      :
                                    Defendants.       :
--------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiff John M. Stack sued Defendants Karr Barth Associates, Inc., AXA Advisors,

Inc., and AXA Network, Inc. ("Karr Barth")[1] for a variety of violations of the Family Medical

Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*; the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. §§ 1001 *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§§ 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §

951.  Third Amended Complaint ("TAC"), Dkt. 57.[2]  Defendants have moved for summary

judgment on all claims.  Notice of Mot., Dkt. 64.  For the reasons discussed below, Defendants'

motion is GRANTED, and the case is dismissed with prejudice.

---

[1]      Karr Barth Associates, a Pennsylvania corporation, is the Philadelphia area branch office of AXA Advisors,
LLC, a Delaware corporation.  Def. 56.1 Stmt., Dkt. 73 ¶¶ 1, 3.  AXA Advisors sells its products through Defendant
AXA Network.  *Id.* ¶ 2. Defendants collectively are referred to as "Karr Barth."

[2]      Stack also alleged hostile work environment claims pursuant to the ADA and the PHRA.  TAC ¶¶ 50–59,
60–62.  Stack voluntarily dismissed those claims.  Stip., Dkt. 68.

# BACKGROUND

Stack has been associated with Karr Barth in various capacities since 1994.  Def. 56.1 Stmt., Dkt. 73 ¶ 4 (undisputed).  For much of this period, Stack worked as both an assistant agency manager and as a 14th Edition Agent.[3]  *Id.* ¶ 7 (undisputed).  Since March 31, 2017, however, Stack has engaged in "full time production" as a 14th Edition Agent.  *Id.* ¶¶ 8, 10 (undisputed).

Stack took leaves of absence from November 2017 to March 2018 and from May to September 2018 to participate in inpatient treatment programs for alcoholism.[4]  TAC ¶ 19; Def. 56.1 Stmt. ¶ 43 (undisputed).  Over the course of his two leaves, Karr Barth reassigned eleven of Stack's clients to other financial advisors.  TAC ¶ 20; Def. 56.1 Stmt. ¶ 65.[5]  Stack alleges that as a result of these reassignments, he lost over half a million dollars in income.  Def. 56.1 Stmt. ¶ 78 (Pl. Resp.).  He also argues that while he was out on leave, Karr Barth assessed over $26,000 in fees against him that should have been waived, and that Karr Barth unlawfully prohibited him from accessing his 401(k) account.  TAC ¶¶ 21–23, 40–49; Pl. 56.1 Stmt., Dkt. 70 ¶ 137.

Stack claims that Karr Barth's reassignment of his clients, failure to pay him the associated commissions, and assessment of fees that should have been waived constitute retaliation and interference with his rights in violation of the FMLA.  TAC ¶¶ 32–38.  He also

---

[3]  A 14th Edition Agent is a financial professional who sells a variety of financial products, including insurance policies and annuities.  Def. 56.1 Stmt. ¶ 6 (undisputed).  14th Edition Agents also advise clients on developing their portfolios and make recommendations regarding client asset management.  *Id.* ¶ 61 (undisputed).  Such agents earn income through commissions and do not have a fixed salary.  *Id.* ¶ 22 (undisputed); Cranshaw Aff., Dkt. 67-5 ¶ 9.  Agents are obligated to abide by certain securities laws and financial regulations.  Def. 56.1 Stmt. ¶ 37 (undisputed).

[4]  Prior to his first leave of absence, Stack spent approximately 69 days in inpatient alcoholism treatment programs over six stays between May and November 2017.  Def. 56.1 Stmt. ¶ 44 (undisputed).  Those leaves are not at issue in this lawsuit.

[5]  After Stack returned from his second leave, six of the eleven reassigned clients consented to have their accounts returned to Stack.  Def. 56.1 Stmt. ¶ 78 (undisputed).

contends that, based on the same facts, Karr Barth discriminated and retaliated against him, and failed to provide him with a reasonable accommodation for his alcoholism-related disability, in violation of the ADA and the PHRA. *Id.* ¶¶ 50–59, 60–62. Stack further claims that Karr Barth unlawfully denied him access to his 401(k) account in violation of ERISA. *Id.* ¶¶ 40–49.

On November 8, 2018, Stack filed this action, Compl., Dkt. 1, and filed discrimination charges against Karr Barth with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Rights Commission, Def. 56.1 Stmt. ¶ 97 (undisputed). On February 25, 2019, the EEOC dismissed the charge, finding that it had no jurisdiction because Stack lacked an employee-employer relationship with Karr Barth. *Id.* ¶ 98 (undisputed). After lengthy discovery in this case, Karr Barth moved for summary judgment, arguing that Stack is an independent contractor who is not entitled to the protections of the FMLA, the ADA, ERISA, and the PHRA, and, in the alternative, that his claims fail on the merits. Def. Mem. of Law, Dkt. 65.

## DISCUSSION

### I.    Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). To defeat summary judgment, "[t]he non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'"

*Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (quoting *Celotex*, 477 U.S. at 324).   In deciding a motion for summary judgment, a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."   *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79–80 (2d Cir. 2009)).

Stack alleges that Karr Barth violated his rights pursuant to four statutes: the ADA, ERISA, the FMLA, and the PHRA.   All of these statutes protect employees, not independent contractors.   42 U.S.C.A. § 12112 (ADA); 29 U.S.C.A. §§ 1002, 1003 (ERISA); 29 U.S.C.A. § 2614 (FMLA); 43 Pa. Cons. Stat. § 955(a) (PHRA).   Courts use a test developed from the common law of agency to determine whether an individual is an employee or an independent contractor for purposes of the ADA, ERISA, and the PHRA.   *See Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 440 (2003) (ADA); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992) (ERISA); *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 179–80 (3d Cir. 2009) (PHRA).   To determine whether an individual is an employee or an independent contractor for purposes of the FMLA, courts use the economic realities test.   *Edwards v. Cmty. Enters., Inc.*, 251 F. Supp. 2d 1089, 1103 (D. Conn. 2003).

## II.   Stack Is an Independent Contractor Pursuant to the Common Law of Agency

Pursuant to the common law of agency, thirteen factors should be assessed to determine whether a hired party is an employee or an independent contractor.   As detailed by the Supreme Court in *Community for Creative Non-Violence v. Reid*, the thirteen factors are:

> [1] the hiring party's right to control the manner and means by which the product is accomplished . . .   [;] [2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to

> assign additional projects to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hired party's role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in business; [12] the provision of employee benefits; and [13] the tax treatment of the hired party.

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989).

The test set forth in *Reid* is a balancing test that evaluates the totality of the circumstances.[6]  *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113–14 (2d Cir. 2000).  Accordingly, no single factor is dispositive.  *Reid*, 490 U.S. at 752; *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992).  But courts must place the "greatest emphasis" on the first factor, the manner and means of control exercised by the hiring party.  *Eisenberg*, 237 F.3d at 114.  Moreover, courts must "disregard" factors that are either irrelevant or of "indeterminate" weight, namely those that "do not meaningfully cut in favor of either" employee or contractor status in the circumstances of the case at hand.  *Id.*

## A. The Majority of the *Reid* Factors Support the Conclusion that Stack Is an Independent Contractor

### 1. The Hiring Party's Right to Control the Manner and Means by Which the Product Is Accomplished

Karr Barth exercises no control over the manner and means by which Stack does his work.  Stack chooses the products he sells, the clients he seeks out, and the time and manner of

---

[6]     Because it is a balancing test, courts may find a plaintiff to be an independent contractor even when some factors suggest employee status.  In *Reid* itself, the Supreme Court found that the plaintiff was an independent contractor even though the hiring party provided specifications for plaintiff's work product and exerted a degree of control over the end result.  *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 752 (1989); *see also Johnson v. FedEx Home Delivery*, No. 04-CV-4935, 2011 WL 6153425 (E.D.N.Y. Dec. 12, 2011) (holding that drivers were independent contractors despite performing unskilled work that was part of the hiring party's regular business); *Morris v. Ales Grp. USA, Inc.*, No. 04-CV-8239, 2007 WL 1893729 (S.D.N.Y. June 29, 2007) (finding that a cosmetologist was an independent contractor despite receiving healthcare benefits).

solicitation.  Stack Dep., Dkt. 71-1 at 50:6-10.  He also sets his own work schedule, has no hourly minimum requirement, and decides where he will work.  *Id.* at 49:1-5, 50:11-13.

Stack argues that Karr Barth exercises control over him in two ways: through licensing and continuing education requirements and through production quotas.  With respect to the first form of alleged control, Stack is required to take certain professional exams in order to work as a 14th Edition Agent.  *Id.* at 18:21-19:14.  He is also required to undergo periodic training.  Def. 56.1 Stmt. ¶ 13 (undisputed).  Both parties agree that these requirements are mandated by the Financial Industry Regulatory Authority ("FINRA").  *Id.*  But Karr Barth's limited supervision of agents for regulatory purposes (that is, to comply with FINRA requirements) does not indicate a common law employment relationship.  *See Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 230 (2d Cir. 2008) ("[P]olicies that merely reflect professional and governmental regulatory standards may not typically impose the kind of control that marks an employment relationship"); *Weary v. Cochran*, 377 F.3d 522, 526 (6th Cir. 2004) (finding plaintiff to be an independent contractor even though he had to "comply with applicable legal and ethical rules").  Accordingly, because Karr Barth's licensing and education requirements are a function of requirements of a regulatory authority, and not created by Karr Barth, they do not factor into whether Stack is an employee or an independent contractor.

With respect to production quotas, Stack claims that he is required to sell a certain amount of proprietary AXA products to keep his position.  Def. 56.1 Stmt. ¶ 34 (Pl. Resp.); Stack Dep. at 50:15-24.  The parties dispute whether meeting those quotas is a requirement to avoid termination or whether they relate only to benefits eligibility.[7]  Resolving the factual

---

[7]      *Compare* Def. 56.1. Stmt. ¶ 34 (Def. Reply) ("Plaintiff must meet annual production requirements to participate in group benefits.") *with* Stack Dep. at 18:7-18 ("I'm required to make certain goals, to . . . keep my benefits . . . .  I also need to maintain production to keep employed at AXA.").

dispute in favor of Stack for purposes of this motion, the Court assumes that meeting the production quotas is a condition of his job. Similarly, Stack notes that Karr Barth's Branch Manager holds mandatory annual meetings regarding the performance of 14th Edition Agents. Pl. 56.1 Stmt. ¶ 100. But even so, being required to meet production quotas and attend annual meetings do not, as a matter of law, make him an employee. Courts have found plaintiffs to be independent contractors even when their managers give instructions or set criteria for work quality. *See Barnhart v. N.Y. Life Ins. Co*, 141 F.3d 1310, 1313 (9th Cir. 1998) (holding that the imposition of "minimum standards" as a condition of employment did not make plaintiff an employee as a matter of law); *Cosgriff v. Valdese Weavers LLC*, No. 09-CV-5234, 2012 WL 1071497, at *6 (S.D.N.Y. Mar. 30, 2012) ("[S]ome level of control is not inconsistent with the existence of an independent contractor relationship . . . .").

Even if Karr Barth sets conditions of employment, requires periodic training and examinations, and exercises some oversight of 14th Edition Agents, considering Stack's wide leeway over the manner and means of production, this factor weighs in favor of a finding that Stack is an independent contractor.

### 2. The Skill Required

A skilled worker is more likely to be an independent contractor. *Compare Reid*, 490 U.S. at 752 (skilled sculptor was an independent contractor) *and Cosgriff*, 2012 WL 1071497, at *7 (skilled fabric salesperson was an independent contractor) *with Eisenberg*, 237 F.3d at 119 (unskilled warehouse worker was an employee). Stack is a "highly-skilled financial planner with in-depth expertise in financial and investment matters." Def. 56.1 Stmt. ¶ 11 (undisputed). He has been registered with FINRA since 1994 and has passed several FINRA examinations. Def.

56.1 Stmt. ¶ 12 (undisputed).  Accordingly, this factor supports a finding that Stack is an

independent contractor.

### 3.  The Source of the Instrumentalities and Tools

Stack, not Karr Barth, is responsible for sourcing the instrumentalities of his work.  These

include his office space, computer, printer, and telephone.  Def. 56.1 Stmt. ¶¶ 16–17

(undisputed).  Through an annual Support Provided by AXA Network ("SPAN") agreement,

Stack pays rent to Karr Barth and pays fees for telephone service, computer support, his

computer, and printing.  *Id.*  Karr Barth does not reimburse Stack for those costs.  *Id.* ¶ 32

(undisputed).[8]  Additionally, Stack declared several of these payments as expenses on Schedule

C of his income tax forms, including the costs related to his cell phone, internet access, car,

business periodicals, licensing, and client entertainment.  Stack Dep. at 42:15-43:12.

Stack's payments and deductions indicate that he is responsible for providing and

financing the tools of his job.  Providing one's own instrumentalities and tools supports a finding

of independent contractor.  *Reid*, 490 U.S. at 751 (independent contractor supplied his own

sculpting tools); *Johnson v. FedEx Home Delivery*, No. 04-CV-4935, 2011 WL 6153425, at *12

(E.D.N.Y. Dec. 12, 2011) (independent contractors provided delivery vans and fuel).  In

particular, renting office space and paying for computer and telephone equipment strongly

suggest that a worker is an independent contractor.  *See Kravis v. Karr Barth Assocs.*, No. 09-

CV-485, 2010 WL 337646, at *4 (E.D. Pa. Jan. 26, 2010).  This factor weighs in favor of a

finding that Stack is an independent contractor.

---

[8]     Stack notes that the fees he pays pursuant to the SPAN Agreement are partially subsidized by Karr Barth.
Def. 56.1 Stmt. ¶ 17 (Pl. Resp.); Stack Dep. at 17:23-18:3.  Subsidized or not, Stack still pays for the tools of his
work.

#### 4.   The Location of the Work

A worker's freedom to determine the location of his work indicates independent contractor status.  *Reid*, 490 U.S. at 752; *Morris v. Ales Grp. USA, Inc.*, No. 04-CV-8239, 2007 WL 1893729, at *5 (S.D.N.Y. June 29, 2007).  Stack chooses where to work.  Stack Dep. at 49:6-8; Def. 56.1 Stmt. ¶ 40 (Pl. Resp.).  The fact that he rents and uses office space at Karr Barth, Def. 56.1 Stmt. ¶ 40, does not diminish the significance of his freedom to work elsewhere. This factor supports a finding that Stack is an independent contractor.

#### 5.   The Duration of the Relationship Between the Parties

A short relationship between the parties "implies that a worker is an independent contractor."  *Eisenberg*, 237 F.3d at 117.  Stack has been associated with Karr Barth for more than 25 years.  Def. 56.1 Stmt. ¶ 4 (undisputed).  He has spent at least 12 years as a 14th Edition Agent, both in a "personal production" capacity while he was also an assistant agency manager and in a "full time production" capacity after leaving the manager position.  Def. 56.1 Stmt. ¶ 5 (Pl. Resp.); *id.* ¶¶ 7–8.  Such multi-year tenures suggest an employer-employee relationship. *Gaffney v. Dep't of Info. Tech. & Telecomms.*, 536 F. Supp. 2d 445, 461 (S.D.N.Y. 2008). Accordingly, Stack's long tenure at Karr Barth supports a finding that he is an employee.

#### 6.   Whether the Hiring Party Has the Right to Assign Additional Projects to the Hired Party

Because Stack is a full-time 14th Edition Agent, Karr Barth does not assign clients or other work to him.  Stack Dep. at 50:2-4.[9]  Moreover, Stack makes his own decisions about client solicitations.  *Id.* at 50:6-10.  Accordingly, this factor weighs in favor of finding Stack is an independent contractor.

---

[9]      While Stack was an assistant agency manager, Karr Barth assigned Stack clients, whom he continued to service after he became a full time 14th Edition Agent.  Def. 56.1 Stmt. ¶ 35 (Pl. Resp.).

### 7.   Extent of the Hired Party's Discretion Over When and How Long to Work

Stack has wide discretion over when and how long to work, and Karr Barth does not impose any schedule on his work hours.  Def. 56.1 Stmt. ¶ 41; Stack Dep. at 49:1-5, 50:11-13. Stack determines his own extended leaves, Def. 56.1 Stmt. ¶ 42, although internal Karr Barth policy requires him to provide notice before taking long leaves.  Def. 56.1 Stmt. ¶ 42 (Pl. Resp.); Pl. Mem. of Law at 2.[10]  Requiring workers to obtain permission before taking leave indicates that the worker is an employee; requiring a worker to provide notice before taking leave does not indicate the requisite control typical of an employee-employer relationship.  *Compare Cosgriff*, 2012 WL 1071497, at *9 (finding freedom to take vacation whenever desired, despite a notification requirement, indicative of independent contractor status) *with Gaffney*, 536 F. Supp. 2d at 461 (finding a requirement that managers approve vacation requests indicative of employee status).  Stack's freedom to choose when and for how long to work is not so inhibited by a leave notification requirement as to indicate employee status.  In short, this factor weighs in favor of finding that Stack is an independent contractor.

### 8.   Method of Payment

Stack, as a full-time 14th Edition Agent, is compensated solely through commissions.[11] Def. 56.1 Stmt. ¶ 22 (undisputed).  Compensation based on hours worked indicates employee status, while compensation based on projects completed indicates contractor status.  *Eisenberg*,

---

[10]     Stack is not required to notify Karr Barth of short leaves, such as a "two week vacation."  Stack Dep. 51:19-21.

[11]     Stack points to an e-mail from Karr Barth's human resources department that references his "annual salary" to argue that he is paid via salary.  Pl. 56.1 Stmt., Dkt. 70 ¶ 103 (citing Email, Dkt. 71-9).  But semantics aside, it remains undisputed that Stack's income is one hundred percent commission-based.  Def. 56.1 Stmt. ¶ 22 (undisputed).

237 F.3d at 119.  Accordingly, Stack's commission-based compensation cuts in favor of a finding that he is an independent contractor.

### 9.  The Hired Party's Role in Hiring and Paying Assistants

Stack selects which assistants to hire and pays his assistant's salary.[12]  Stack Dep. at 46:9-21; Def. 56.1 Stmt. ¶¶ 20–21 (undisputed).  A worker's freedom to hire and pay assistants supports a finding of independent contractor status.  *See Johnson*, 2011 WL 6153425, at *13 (finding workers' "predominant role in hiring, paying, and supervising" others indicative of contractor status).  Stack testified that Karr Barth plays a role in the assistant hiring process by conducting background checks and fingerprinting.  Stack Dep. at 46:12-21.  Karr Barth's involvement, however, is required by securities law, *see* Fingerprinting of Securities Industry Personnel, 17 C.F.R. § 240.17f-2, meaning Karr Barth does not engage in these functions in order to impose control typical of an employer-employee relationship.  *See Salamon*, 514 F.3d at 230 (finding policies mirroring regulatory standards not indicative of employer control).  Moreover, Stack is the one who selects, hires, and pays his assistant, even if Karr Barth performs legally required administrative functions.  Taken together, this factor weighs in favor of a finding that Stack is an independent contractor.

### 10. Whether the Work is Part of the Regular Business of the Hiring Party

Karr Barth's regular business is the sale of insurance products and securities.  Def. 56.1 Stmt. ¶¶ 1–3.  If a hired party "is performing tasks that directly relate to the objective of the hiring party's business," it lends credence to an employer-employee relationship.  *Aymes v. Bonelli*, 980 F.2d 857, 863 (2d Cir. 1992).  Stack's job as a 14th Edition Agent is to sell

---

[12]     Because Stack does not need a full-time assistant, he pays only one-third of his assistant's salary.  The remaining portion is paid by two other agents, who use the same assistant.  *See* Stack Dep. at 46:22-47:12; Def. 56.1 Stmt. ¶¶ 20–21 (undisputed).

"insurance, annuity, and other financial products and services," Def. 56.1 Stmt. ¶ 6 (undisputed), which is the thrust of Karr Barth's regular business.  This factor weighs in favor of finding Stack to be an employee.

### 11. Whether the Hiring Party Is in Business

If a hiring party is a business (as opposed to an individual), it is more likely to indicate an employer-employee relationship.  *Cosgriff*, 2012 WL 1071497, at *10.  All three Defendants are business organizations.  Def 56.1 Stmt. ¶¶ 1–3.  This factor supports a finding that Stack is an employee.

### 12. Provision of Employee Benefits

Karr Barth provides Stack with benefits, including life, health, medical, vision, and dental insurance.  *Id.* ¶ 34 (undisputed); Stack Dep. at 18:7-18.  Stack also receives both short- and long-term disability benefits.  Pl. 56.1 Stmt. ¶ 102 (undisputed); Def. 56.1 Stmt. ¶ 59 (undisputed).  Stack, however, is not automatically eligible for these benefits; instead, they are contingent on his meeting certain production quotas.  Def. 56.1 Stmt. ¶ 34 (undisputed).

When determining whether a plaintiff is an independent contractor or an employee in the employment discrimination context, "courts should not ordinarily place extra weight on the benefits" factor.  *Eisenberg*, 237 F.3d at 117.  Indeed, courts have found workers to be independent contractors even though employee benefits were unconditionally provided by the hiring party.  In *Barnhart v. New York Life Insurance Co.*, the court held that an insurance salesperson's receipt of life insurance and matching contributions to a 401(k) account were not probative of employee status.  *Barnhart*, 141 F.3d at 1313; *see also Morris*, 2007 WL 1893729, at *5 (finding that cosmetologist was an independent contractor despite receiving healthcare benefits).  Moreover, Karr Barth's conditioning of Stack's benefits on performance standards is

not a hallmark of a typical employer-employee relationship; in a typical employee relationship, employees receive such benefits by virtue of their employment and not conditioned on the work performed.  Accordingly, these mitigating considerations mean this factor is of indeterminate value.

### 13. The Tax Treatment of the Hired Party

Stack's tax filings are consistent with him being an independent contractor.  In 2017 and 2018, Stack's income tax returns included Schedule C sole proprietorship forms on which he deducted business expenses including the costs of his car, cell phone, internet access, business periodicals, licensing, and client entertainment.  Def. 56.1 Stmt. ¶¶ 29–30 (undisputed); Stack Dep. 42:15-43:12.  His Schedule C filings evidence a desire to benefit from expense deductions typically reserved for business owners and independent contractors.  By choosing to file his taxes in this manner, Stack essentially admitted (under penalties of perjury) that he is an independent contractor.

Karr Barth does not withhold income tax from Stack's commissions, Def. 56.1 Stmt. ¶ 28 (undisputed), and 80% of his income in 2018 and 50% in 2017[13] was reported to the IRS on IRS Form 1099.  Def. 56.1. Stmt. ¶ 23 (Pl. Resp.).  In contrast to Form W-2, Form 1099 does not include any withholding, because the entity providing the Form 1099 does not directly remit to the IRS taxes on the taxpayer's earnings; instead, payment of the full tax burden is the responsibility of the taxpayer.  Given this tax dynamic, courts have found that providing a

---

[13]     In 2017, Stack worked as an assistant agency manager, an employee position, for the first quarter of the year; income from that position was presumably reported on a Form W-2.  After he switched to the full time 14th Edition Agent position, he spent nearly seven weeks on medical leave, and almost ten weeks in other inpatient treatment.  Def. 56.1 Stmt. ¶¶ 7–8, 44, 48.  The impact of those leaves on his commissions presumably explains the relatively low percentage of income reported on Form 1099 for that year.

worker with a Form 1099 and not withholding income taxes from wages weigh in favor of a finding that the person is an independent contractor.  *See Eisenberg*, 237 F.3d at 118.

Stack argues that some of his commission income in 2018 and 2019 was reported on a Form W-2, which usually indicates employee status.  Pl. Mem. of Law at 2.  Stack is classified as a "statutory employee" for the purposes of FICA because he qualifies as a "full-time life insurance salesman"  under applicable IRS regulations. Def. 56.1. Stmt. ¶ 27.  As a result, Karr Barth is required to withhold FICA taxes from some of his insurance commissions, and those withholdings are reflected on a Form W-2.  Despite Stack being a "statutory employee," Karr Barth does not pay employer payroll tax associated with his earnings.  *Id.* ¶ 28 (undisputed).  In any event, "statutory employee" status for FICA purposes does not inform the determination of whether someone is an employee or an independent contractor.  *See* Rev. Rul. 90-93, 1990-2 C.B. 33 (1990) ("a full-time insurance salesman under the Internal Revenue Code is a statutory creation and does not create an employee-employer relationship"); *Kravis*, 2010 WL 337646, at *5 ("[Plaintiff's] status as a 'Full-Time Life Insurance Salesperson' for tax purposes does not negate her role as an independent contractor").  Karr Barth issues Stack Forms W-2 with respect to FICA taxes because he is a statutory employee under IRS regulations, not because it views Stack as an employee.

Overall, Stack's and Karr Barth's handling of Stack's taxes support a finding that Stack is an independent contractor.

## B.  Taken Together, the *Reid* Factors Support a Finding that Stack Is an Independent Contractor

Nine of the *Reid* factors, including the weightiest first factor, favor a finding that Stack is an independent contractor.  Stack has predominant control over the manner and means of production.  Stack is a highly skilled financial professional.  He pays for the instrumentalities

and tools of his work, chooses the location of his work, and is not assigned additional projects by Karr Barth.  Stack is paid entirely on commission and plays the predominant role in the hiring and payment of his assistant.  He pays his own income taxes in a manner that is consistent with him being an independent contractor.

On the other hand, the fifth, tenth, and eleventh factors all weigh in favor of finding Stack to be an employee.  With respect to the duration of the relationship, Stack has had a lengthy tenure at Karr Barth.  But when weighing the factors, courts have not found prolonged associations to indicate employee status when the balance of factors support independent contractor status.  *See, e.g.*, *Speen v. Crown Clothing Corp.*, 102 F.3d 625, 628 (1st Cir. 1996) (finding a salesperson to be an independent contractor despite working at apparel company for 20 years); *Barnhart*, 141 F.3d at 1313 (16 year relationship); *Hopkins v. Duckett*, No. 02-CV-5589, 2006 WL 3373784, at *6 (D.N.J. Nov. 21, 2006) (15 year relationship).

With respect to the tenth factor, Stack performs work that is part of Karr Barth's regular business.  But in balancing the factors, courts commonly find workers are independent contractors even when they perform the hiring party's regular business.  *See, e.g.*, *Barnhart*, 141 F.3d 1310 at 1313 (finding contractor status despite a worker's role as a life insurance salesperson at a life insurance company); *Johnson*, 2011 WL 6153425, at *11 (finding contractor status despite workers' roles as delivery drivers at a delivery company).

With respect to the eleventh factor, Karr Barth is a business.  Workers are, however, regularly found to be independent contractors despite working for businesses, when the balance of factors swing the other way.  *See, e.g.*, *Legeno v. Douglas Elliman, LLC*, 311 F. App'x 403 (2d Cir. 2009) (finding that a realtor was an independent contractor even though she worked for a real estate company); *Cosgriff*, 2012 WL 1071497 (finding that a fabric salesperson was an

15

independent contractor even though he worked for a fabric manufacturer); *Johnson*, 2011 WL 6153425 (finding that drivers were independent contractors even though they worked for a delivery company).

One factor, the provision of employee benefits, is of indeterminate value because Stack's benefits are contingent on a production quota. Factors that do not "meaningfully cut in favor" of either employee or independent contractor status should not affect the test's calculus. *Eisenberg*, 237 F.3d at 114. Furthermore, courts typically do not place significant emphasis on this factor in the employment discrimination context. *Id.* at 117. Accordingly, the Court disregards this factor in its analysis.

In short, although three factors weigh in favor of a finding that Stack is an employee and one factor is of indeterminate weight, looking at the totality of the circumstances, Stack is an independent contractor pursuant to the common law of agency.[14] Because Stack is not an employee, he cannot state a claim under the ADA, ERISA or PHRA; Defendants' motion for summary judgment on those claims is granted.

## III.   Stack Is an Independent Contractor Pursuant to the Economic Realities Test

In contrast to the ADA, ERISA, and PHRA, which look to the common law of agency to determine whether a person is an employee covered by the statute, employee status under the FMLA is ascertained using the economic realities test. The economic realities test weighs five factors:

---

[14]   Notably, other courts have similarly concluded that 14th Edition Agents are independent contractors. In *Cabezudo Mejias v. AXA Advisors*, the plaintiff was found to be an independent contractor because he was paid by commission, determined his own work schedule, identified as self-employed on tax returns, paid a fee to use office equipment, and hired and paid his own assistant, even though he also attended regular training and had to comply with a production quota. No. 06-CV-1526, 2008 WL 11503770 (D.P.R. Apr. 30, 2008). Similarly, in *Kravis v. Karr Barth Associates*, the plaintiff was found to be an independent contractor because she could choose her work location, was paid by commission, determined her work schedule, and was only paid benefits if she met certain criteria. No. 09-CV-485, 2010 WL 337646, at *5 (E.D. Pa. Jan. 26, 2010).

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir. 1988).

Like the test derived from the common law of agency, the economic realities test is based on the totality of the circumstances, and no one factor is dispositive.[15]  *Id.* at 1059.  The factors are "merely aids to analysis . . . helpful only insofar as they elucidate the 'economic reality' of the arrangement."  *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017) (quoting *Thibault v. Bellsouth Telecomms., Inc.*, 612 F.3d 843, 846 (5th Cir. 2010)).  Although the factors in this test are phrased differently than those in the test derived from the common law of agency, there is obvious overlap.[16]

### A. Individually, the Majority of the Economic Reality Test Factors Support the Conclusion that Stack Is an Independent Contractor

#### 1. The Degree of Control Exercised by the Employer over the Workers

Karr Barth exercises little control over Stack's work.  Stack has discretion over his sales, clients, and work schedule.  He provides his own equipment; he is able to choose the location of his work, and he has the predominant role in hiring and paying his assistant.  Taken together with Karr Barth's hands-off approach, these factors support a finding that Stack is an independent contractor.

---

[15]    Because it is a balancing test, just like with the common law of agency test, courts may find a plaintiff to be an independent contractor even when some of the factors point towards an employer-employee relationship.  *See, e.g.*, *Franze v. Bimbo Bakeries USA, Inc.*, 826 F. App'x 74 (2d Cir. 2020) (finding that drivers were independent contractors despite being integral to the business and being prohibited from working for competitor companies); *Preacely v. AAA Typing & Resume, Inc.*, No. 12-CV-1361, 2015 WL 1266852 (S.D.N.Y. Mar. 18, 2015) (determining that a typist was an independent contractor despite being integral to the hiring party's business).

[16]    In fact, the Court knows of no case where an individual was found to be an independent contractor pursuant to one test but an employee pursuant to the other test.

Although Stack was required to notify Karr Barth of any upcoming leave, that does not prevent a finding that he is an independent contractor. *See Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 602 (E.D.N.Y. 2012) (concluding that pursuant to the economic realities test, "it seems reasonable . . . that the Defendants would request some advance notice if [workers] were going to be absent . . . and thus this would not weigh in favor of finding that the Plaintiffs were employees").

In assessing this factor, courts also examine whether the plaintiff may do work for other hiring parties. *See, e.g.*, *Saleem*, 854 F.3d at 131 (finding that drivers were independent contractors because they could drive for other companies). Stack can earn and has earned money from other businesses, including earning compensation from an insurance brokerage firm for a referral. Def. 56.1 Stmt. ¶ 33 (undisputed). Overall, this factor suggests Stack is an independent contractor.

## 2. The Workers' Opportunity for Profit or Loss and Their Investment in the Business

Stack's livelihood as a 14th Edition Agent is dependent on his investment in his work. Stack is paid entirely through sales commissions, meaning that he controls his income: the more productive he is, the more he makes. Additionally, Stack sets his own schedule, chooses his own clients, and selects what products to sell. His payments for office space and equipment and his predominant role in hiring and paying his assistant demonstrate that he invests a significant amount in his practice. This factor weighs in favor of finding him to be an independent contractor.

## 3. The Degree of Skill and Independent Initiative Required to Perform the Work

Stack is a highly-skilled licensed financial advisor.  Moreover, his position at Karr Barth requires significant independent initiative because success depends on seeking out clients and making sales.  This factor also supports a finding that Stack is an independent contractor.

### 4.  The Permanence or Duration of the Working Relationship

Stack's tenure at Karr Barth is at least 25 years, including 12 years as a 14th Edition Agent in some capacity.  The length of the relationship supports a finding that Stack is an employee.

### 5.  The Extent to Which the Work Is an Integral Part of the Employer's Business

As a financial advisor who sells insurance and annuities at a securities brokerage firm, Stack's work can readily be considered an integral part of Karr Barth's business.  This factor supports a finding that Stack is an employee.

### B.  Taken Together, the Economic Realities Test Factors Support the Conclusion that Stack Is an Independent Contractor

The balance of factors favor finding Stack to be an independent contractor.  The first, second, and third factors all point towards that designation: Karr Barth exercises minimal control over Stack, Stack has extensive investment and opportunities for profit and loss in his work, and his job requires a high degree of skill and independent initiative.

The fourth and fifth factors point toward employee status but do not swing the balance. The fourth factor, Stack's long tenure with Karr Barth, cuts in favor of him being an employee. But given the totality of the circumstances, workers can be independent contractors despite having lengthy working relationships.  *See Ming Hou v. Hong Kong Chinese Rest.*, No. 14-CV-869, 2018 WL 8731543, at *3 (D. Conn. Mar. 29, 2018) (finding plaintiff an independent contractor despite relationship that "lasted over a period of years"); *Herrera v. S. Valley Floors,*

*Inc.*, No. 16-CV-839, 2019 WL 1376821, at *7 (D. Utah Mar. 27, 2019) (holding that plaintiff was an independent contractor despite a multi-year association).

The fifth factor, that Stack's work is integral to Karr Barth's business, also suggests that Stack is an employee.  But courts have found that the weight of this factor is diminished when the worker in question is not "indispensable" to the hiring party.  *Mikhaylov v. Y & B Transp. Co.*, No. 15-CV-7109, 2019 WL 1492907, at *8 (E.D.N.Y. Mar. 31, 2019) ("the weight of this factor is diminished where the work . . . is interchangeable with work by other [agents]").  Applied here, there is no indication that Stack is indispensable to Karr Barth.  All of the 14th Edition Agents at Karr Barth have the same license and are required to undergo the same training pursuant to relevant laws and regulations.  Def. 56.1 Stmt. ¶¶ 37–38 (undisputed).  Furthermore, during Stack's two extended leaves between 2017 and 2018, several of his clients were reassigned to other agents, *id.* ¶ 69 (undisputed), indicating that his services are interchangeable with those provided by other advisors.  Accordingly, the strength of this factor is muted, further supporting the conclusion that that Stack is an independent contractor pursuant to the economic realities test.

In short, when the factors are weighed on balance, Stack is an independent contractor.  Accordingly, he cannot state a claim pursuant to the FMLA because it only protects employees.

## CONCLUSION

Because Stack is an independent contractor, he is not entitled to protection pursuant to the ADA, ERISA, the FMLA, and the PHRA.  Accordingly, the Court decides the motion on this threshold issue, and Defendants' motion for summary judgment is GRANTED.  This case is DISMISSED with prejudice.

The Clerk of Court is respectfully directed to terminate all open motions and to close this case.


**SO ORDERED.**

**Date:  March 18, 2021**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**